Good morning, Your Honors. May it please the Court. First off, I'd like to apologize for my tardiness this morning. It's unexcused. Next, I'll proceed right to the case. The judgment below… You should identify yourself. Yes, Your Honor. Everett Skillman, Counsel for Appellant. All right. Seneca. First off, Your Honor, I'll address the equitable contribution cause of action brought by my client. Maybe you can identify who your client is with respect to that. My client… The equitable contribution claim is made by Seneca… Exactly. …as insurer. As insurer. The breach of contract claim is made by Seneca as S&E of the claims… S&E. …of the insurance. Yes. Okay. Right. My client, Seneca Insurance Company, is a co-primary insurer on the two risks, the Linwood property and the Riverside property. Okay. As to that co-insurer position, and I have no idea why your client decided to do this, but it's not… Your client retroactively canceled its policy, did it not? No, it did not. No? It did not retroactively cancel the policy. I've read your complaint, and the complaint says that we canceled our policy effective a date before the accident. That's an allegation in the complaint, is it not? It is. Okay. However… Assuming that allegation is true, which I get to do because you made it, doesn't that mean you weren't covering them on the date of the accident? This is an instance in which there were pleadings in the alternative. Well, show me where in your complaint you alternatively say, we canceled the policy. No, we didn't. Show me where you said, no, I think that would have been a Rule 11 violation, but that's a separate issue. Show me where in your complaint you make the alternative allegation that the policy nonetheless was in effect on the day of the accident. I do not have the complaint with me right now, but it's in the equitable contribution clause. No, you make an equitable contribution claim, and you say, well, since we were covering them on the same day as somebody else, therefore we're entitled to equitable contribution. That's a legal conclusion. I'm looking for a factual allegation that you had not in fact canceled your complaint retroactively. Do you want me to hand you the complaint? Sure. It would be a strange allegation, but I just don't see it. We canceled. Maybe we didn't. But I understand your legal position, which is that you're entitled to equitable contribution, but I just don't find a factual allegation here that you did anything but cancel your policy. Thank you, Your Honor. Next time when you come to argue dismissal of complaint, it might be a good idea to bring the complaint with you. Yes, Your Honor. Thank you. Paragraph 23, pursuant to Rule 8D2 and 3 of the Federal Rules of Civil Procedure, Seneca hereby pleads in the alternative. That's paragraph 23. Right. 24, Seneca pleads in the alternative. Right. No, I understand you're pleading in the alternative seeking equitable contribution. Yes. I'm looking for a factual allegation in those pleadings that in fact you had not canceled your policy as you represented in the first part of the complaint. Well, one thing that has to be borne in mind, Your Honor, is that according to preexisting case law, the complaint is to be liberally construed and all implications arising from the complaint from the allegations are to be treated as true. So, having said that, paragraph 25 says, upon becoming a Seneca, pleads in the alternative, that upon becoming aware of said losses, Seneca performed its contractual duties and indemnified the insurers. No doubt whatsoever that you did that. No doubt whatsoever that you paid off on the policies even though you try to characterize it later as buying off the policy. My question is, where's the allegation that allows me in this complaint to draw any inference that you didn't cancel the policy? You can pay it off and then cancel it retroactively. Nothing stops that. If Seneca is admitting in paragraph 25 that it had contractual duties, then it is saying that it didn't cancel. So, I take it your answer to my question is there's no such allegation in the complaint. You ask us to infer that out of your claim. Mr. Skillman, you can pay on day one and retroactively cancel on day two. So, your allegation that you paid contractually because you were the insurer on day one is not inconsistent with the fact that you retroactively canceled on day two and said you weren't the insurer. I have a question that comes to me at this time and I've been dying to ask you. What was the thinking, if any, behind retroactively canceling the policy? Your Honor, when our firm got the case, we were presented with an assignment document. The assignment document says what it says. And we wanted to be as open and frank with the court as we possibly could. Now, I don't think Judge Bam's question is asking you to excuse your firm's conduct. He's trying to figure out why in the world your client did this. So, your answer is that it was done by the client, not by us. Okay, fine. What did the client say was the reason for or is that violating attorney-client privilege? Well, that's true right there. In other words? In other words, you can't answer the question. That's correct, Your Honor. Thank you. But in answer to His Honor Judge Hurwitz's question, my response would be that it's implied out of paragraph 25. Yeah, see, my problem with it is if you're implied, if it's implied, then maybe you're right. It strikes me as your client trying to have its cake and eat it too. I have no idea why they retroactively canceled the policy. They could have canceled it on the day of the accident. They could have canceled it three days later. They decided for their own good and sufficient reasons, which you can't disclose to us, that they wanted the policy to be canceled retroactively on a day before the accident. And having done that, I'm not sure how your client then gets to say, but it was in existence on the day of the accident. I understand how they get to make an equitable contribution claim. In my view, it loses because of the cancellation of the policy. But you can make claims, but the only fact you allege and to complain is that you canceled the policy. And so none of us can figure out why, but maybe that's a separate issue. Okay. Do you really have to be a co-insurer to get equitable contribution? Suppose that you're not something other than a volunteer. A volunteer. Is there some doctrine of equity which says the insurance company may be all fouled up, but they did pay and they ought to get the money back from the primary insurer? Help me on that.  Our client was not a volunteer, Your Honor. Our client paid the claim several months before that assignment document came into existence. Right. One of the reasons. But the assignment document that came into existence was executed by your client. True. True. For purposes of litigation, I take it, although you can't tell us. And so we're trying to figure out, since you took that litigation position, how do you now get to say what we paid pursuant to the policy on the date of the accident? Here's the answer. When we filed the First Amendment complaint, there was a question as to the validity of the assignment. If the assignment is invalid, then we cannot proceed as an assignee. If the assignment is valid, the whole assignment's invalid. Everything that's in the assignment is invalid. If the assignment is invalid, does it also invalidate your cancellation of the policy? That's our contention, Your Honor. Okay. But you're arguing that the assignment's valid. We're arguing in the alternative. Obviously, for purpose. I'm in this terrible position here. I know.  But if we agree with you that the assignment is valid, then I understand why you may have pled alternatively here. My question is, if the assignment is valid, doesn't that doom your equitable contribution claim? Well, if every single word in the assignment is deemed valid, and my opponent has said that certain words are not valid. She lost on that issue. Yeah, and she's very good at what she does, too, by the way. It's always good to have a good opponent. Excellent. But anyway, my point is, if every single word in the assignment is valid, if it's all carved on the side of Mount Sinai, then it's canceled. Okay. So then that takes me to your— So that takes us to the breach of contract process. Right. And there you're standing in the shoes of your insurance. I'm sorry? You're standing in the shoes of your insurance. Right. I've always thought that was just a neat little phrase. Put aside the issues that were briefed. Here's my question. Your insurance got paid. They have no—what damage did your insurance suffer here? Did they pay more for your policy than for the one before? Under California law, and by the way, the issue of damages was not litigated in law. No, I'm just— Under California law, somebody who alleges a breach of contract cause of action, if they prove sufficient facts, they can recover direct damages, incidental damages, consequential damages. Okay. I understand all of that. There were— Answer my question. How were your insureds hurt here? The only way that it possibly occurs to me is this. Since you paid off right away when the incidents occurred, they had to pay for two policies. Now, I don't know whether or not the alleged bad guys, AMCO, gave them back the money they paid when they canceled their policy or not, but is that what you're seeking, the difference between the cost of the two policies? That's one thing. There were a number of items of incidental damages that weren't part of the proof in the lower court because it was a summary judgment proceeding and damages wasn't one of them. Well, because if that's all you're seeking, my guess is in 10 minutes you could probably settle this case. You're really seeking all the money you paid, right? Correct, Your Honor. But that wasn't a damage that your insured suffered, was it? My client is the assignee of a claim in both consequential and incidental. I understand. I understand. You can keep reciting black-letter law, but I have a different—that's not my question. The insureds, the S&Rs, who are your clients in effect for this case, didn't suffer any damage from not being paid off for their— Well, they were bare for several days. There were several days in which there was no insurance whatsoever. And your client, your other client, Seneca, in full responsibility, stepped up and said, we'll pay you. You had incidents. You had a fire. You had property damage. We'll pay you. So what's the insured's complaint here? Tell me how they were harmed. If we're going to say that the assignment is solid gold— Right, because that's the only— The money that— The assignment's not solid gold. You don't have a contract claim. Then that money that was paid in connection there with was consideration for the assignment. Oh, so—see, and this is what strikes me as lawyer cuteness in the case, and it may not be your—I don't blame your firm. It may be your client. They didn't get $12 million in whatever the number is in return for the assignment. You paid off their claims, and then you retroactively characterized that as a payment for the assignment. But from their position, do you really think they could come in today and recover again for the damages? Because we never recovered for the damages. We just sold off an assignment. Is that really your position? The assignment is either solid gold or it's not. The assignment says— So the answer to my question is yes. You think they can recover twice? No, the assignment says that that $200-something thousand is payment for the assignment. So your position is that your assignees, assineurs, can now come in and recover another $200,000 for their loss against AMCO? Well, it's not double-dipping because they're not in the case, Your Honor, and because AMCO has not— Because they have assigned it to you. So it's not double-dipping. Okay, but don't give me characterizations. I just want a yes or no answer. Your position is that Seneca, as the assignee of the insured's claims against AMCO, can now recover $200,000 on their behalf? Well, that's the nature of an assignment, Your Honor. In other words, if we're buying a claim, they're going to get money. The answer to my question is yes, correct? That is your position. The answer to the question is they got money. That's not—no, the answer to the question— Look, I don't want to joust with you, but really, it's a yes or no answer. You think you can recover, on behalf of the insured's, all the damages they suffered from the fire and the other property damage, yes? Yes, because we've paid for it. And are you urging at all that we consider what you paid for it a collateral source, as far as the insured's damages are concerned, and therefore not cognizable? It is not a collateral source. Okay, thank you. You've answered my question. Yes, thank you, Your Honor. Reserve the rest of my 10 seconds for rebuttal. You've run over time. Oh, okay. I feel sorry for this guy. Here, somebody handed him to you. Thank you. Good morning. May it please the Court, Shanna Burkholder, on behalf of Appelli Amco Insurance Company, erroneously sued as allied. Why did Amco cancel the policy? Well, from my standpoint, that's actually not relevant, and that's why I kind of ignored it. I know that. I know. I don't know the exact reason. I know that the underwriters got together, had a discussion, and decided that they didn't want to insure the property. Did they give a reason for canceling? At the time, they did not, because they technically canceled within the first 90 days. It just didn't go into effect because the insured's broker continued to ask for extensions of time to find a new policy. So do you think this is a valid assignment? Knowing now that if it's not, you may have problems. You know, I didn't really determine whether or not the assignment was valid. I assumed it was for purposes of my motion for summary judgment, and I assumed it was for purposes of the motion to dismiss. The district court made a finding on it, did it not? The district court determined that— Because otherwise, it would have just dismissed the contract claim by saying it's somebody else's contract claim, not yours. Correct. The district court made a determination that in terms of who the assignment was against, it's AMCO, not ALEC. There was an assignment to AMCO. Correct. That AMCO is suing pursuant to. Or that Seneca is suing pursuant to. Correct. I'm sorry. Seneca never said in the district court, by the way, we think this is a terrible assignment. That is correct. I do not believe I remember that. You raised some questions about its validity in terms of parties. That's correct. And the district court ruled against you. That is correct. And you haven't sought review of that on appeal, have you? I have not. Okay. I just wanted to make sure I understood that. Okay. I guess I just have a couple of things to say with respect to the equitable contribution cause of action. I think the court gets it right that the facts pled are what the facts are. It's that the policy was rescinded, canceled retroactively, and no equitable contribution cause of action can be had unless there are co-insurers both liable for indemnifying the insurers on the policy. You think that equitable contribution is a remedy which can only be given to insurance companies? No. Isn't there an alternate basis of saying that the insurance company gets equitable contribution, volunteers don't, but these people are somewhere in the middle? From my research, all of the insurance law cases with respect to equitable contribution are that there has to be two insurers on the risk. And I didn't go outside of insurance law, to be perfectly honest. So I don't think I can answer your question. Let me rephrase Judge Baez's question slightly. What Seneca says is, look, we paid. Put aside all the characterizations of what they did. We paid. And if you hadn't wrongfully canceled the policy, it would have been you, not us. Why doesn't that give rise to a claim for equitable contribution? Well, I mean, in that situation, we also have to decide whether or not the policy was actually wrongfully canceled. Right. But that's not where the district court got to. The district court said you had to be on the risk on that day in order for— and they're saying, well, it shouldn't be so limited. It's enough that you did wrong and we had to step up and do right. And we should now be able to pursue you to make sure we both do right. Why doesn't—that's a little bit less learned way of phrasing the question than Judge Baez did. But why shouldn't we recognize a cause of action for equitable contribution under those circumstances? Well, I think in terms of equitable contribution, I understand a little bit more of your question now. They were a volunteer. And a volunteer doesn't get a cause of action for equitable contribution because— Why do you say they were a volunteer? They had a contract. There was a risk. There was a damage within the risk, and they paid before there was the assignment, which retroactively invalidated the contract. So they were hardly a volunteer at that point. Pursuant to the First Amendment complaint and the allegations therein, which is all we can look at, they're a volunteer because they admitted that they retroactively— But in the real world, they're not a volunteer. Come on. Your opponent complimented you on how good you are, so let me take advantage of that. They didn't pay this out of the goodness of their hearts. They paid this because they had covered the risk. Later, some people figured out some fancy way to recharacterize it, and they may be stuck with that. But surely they weren't a volunteer here. They were an insurer. They paid. Your argument is that's fine, but we weren't an insurer because we canceled their policy beforehand. But surely they were more than a volunteer here. I think that they were trying very hard to—in terms of the facts, they actually did not end up rescinding the policy. I found out much later that they attempted to flat cancel the policy pursuant to their underwriting file. The policy was not rescinded. It was flat canceled. I don't understand a word you said. I'm sorry. So after the motion to dismiss, discovery came out, and part of that discovery was the entirety of the underwriting file. The underwriting file shows when the policy is issued, how it's canceled, et cetera. It was not retroactively canceled or rescinded. The underwriting file clearly shows that it was flat canceled, which is generally what you do when you've issued a binder and you're giving a quote for an insurance company. You flat cancel that quote. What does that mean in terms of timing of their risk, when they're under risk? Was it flat canceled before they paid the money? No, they tried to flat cancel it after they paid the money and after there were risks, and that's not pursuant to California law. So then the underwriting file was an attempt to flat cancel that didn't happen. Why are you mentioning that? That's not in this case. It is. Why? It's in the motion for summary judgment. No, but I mean, I thought that your position was that the assignment agreement has a clause in it which retroactively cancels, and that was the basis upon which the company, Seneca, was not a co-insurer. No, they're not a co-insurer based on their own allegations in the motion to dismiss, at which time I did not have the underwriting file. Well, no, they're not a co-insurer in your view based on their allegations in the First Amendment complaint. That's right. One doesn't make allegations in a motion to dismiss. I'm sorry, yes. Right? Thank you. So the First Amendment complaint says we retroactively canceled the policy. Correct. Now you're telling us the record says, well, maybe they didn't. If they didn't, you've got a problem, don't you? Well, no, flat cancellation, I mean, they've still canceled the policy no matter what they did. Effective when? All of them say retroactively to the first date, and they rewrote a policy to November, a date after the first date. So your position is they did something retroactive. They may have attempted to call it X, but it may have been Y. Correct. But it doesn't matter. Correct. Because it's the date. Right. Which is why Judge Baeyer asked you why you were getting into that at all. I was just trying to correct you guys because you keep saying it was rescinded. Well, that's what the allegation in the complaint says. That's correct. We're dealing with a motion to dismiss. And a motion for summary judgment. Well, what are we dealing with here? Well, right now I'm dealing with a motion to dismiss. Right, which is on the equitable contribution claim. Correct. On the motion for summary judgment, we're dealing with the contract claim. Correct. So if you have to get new stuff into record from the motion for summary judgment to win your equitable contribution claim, then the district court inappropriately dismissed it, right? I do. I just was correcting everybody because I did allege, and my papers do say, about the flat cancellation. And I didn't want to stand here and continue to say, other than the fact that the first amended complaint alleges that information, it turned out potentially not true. Okay. So the district court grants a Rule 12b-6 motion on the equitable contribution claim. Correct. Based on the allegations in the complaint. Correct. Which the three of us have been relying on for the moment. You now get to a motion for summary judgment. Does it matter in the motion for summary judgment how the policy was canceled or rescinded or any other purpose? I take it you win that on the basis of the statute of limitations, do you not? Correct. Tell us what statute of limitations applies here. An argument by your colleague that it ought to be a four-year statute and not a one-year statute. Well, initially the anticipatory breach and repudiation argument was made for the first time. But I don't care about it. Look, does it make any difference whether it's an anticipatory repudiation or a calculated repudiation? The question is which statute of limitations applies. So tell me what statute of limitations applies. The contract. Because they're trying to enforce the contract. They're trying to enforce the insurance policies. And if you want to enforce the terms of the insurance policies, then you need to abide by the terms of the insurance policies. Because what they're making in the end is a claim that you should have paid us on this policy. Correct.  Correct. That what they're seeking was coverage under the policy. So does it matter for that claim whether the repudiation is anticipatory or I don't know what the opposite of anticipatory is, deliberative? I don't believe so. And the issue with the anticipatory repudiation, not only was it not brought up until the opposition, but the more important fact is that even if we consider that argument, Seneca chose to not enforce the contract and sue at the time of the anticipatory repudiation, but waited until there was an actual breach of the policy. And you have a choice between those two things. And if you decide to wait and see if there's a breach of the policy, then you're a follower of the contract, then you're abiding by that contract. Well, but even if you're bringing an anticipatory repudiation claim, aren't you bringing a claim on that contract? Yes. You're saying the other side breached that contract earlier than the accident. Right. That is correct. Still a contract claim. Correct. Insurance contract claim, if you will. Correct. And so your position is that more than one year transpired from the time of the fire until they filed an action. They could have sued for anticipatory repudiation. They didn't. They waited until there was a loss, hoping that there wasn't. And they had to sue within one year. Yes. Okay. And had there been an anticipatory repudiation, their one year would have started to run earlier. That's correct. How does California have this law that one year is sufficient? I mean, is there limitations? Actually, there are public policy reasons behind it. And part of that is because they don't want claims to run stale. And with insurance policies, you can kind of see in this, things can change, witnesses can be lost. If you have a fire and you fix, you could go fix things and repair things without ever giving the insurance company an opportunity to investigate. And that's essentially what the public policy is behind it. Okay. Any further questions? Yeah. Any other questions? No. Thank you very much. Thank you. All right. The case of Seneca Insurance Company v. Ally Insurance Company will be submitted.
judges: Bea, Hurwitz, Motz